## WILLIAMS et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 15, 1909.)

1. MUNICIPAL CORPORATIONS (§ 374*)—PUBLIC IMPROVEMENTS—BREACH OF CONTRACT BY CITY—LIABILITY.

The only liability of the city of New York on a contract made by the aqueduct commissioners under Aqueduct Law (Laws 1883, p. 676, c. 490) § 30, providing that the city shall not be held to any greater liability than is expressly declared in the contract, was to make the payments provided for in the contract, and failure to make such payments was not a breach entitling the contractors to treat the contract as abrogated, and impose a liability on the city not only for the amount to be paid, but for damages caused by the breach or the value of the work done; the only remedy of the contractors being an action to recover money owing them under the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

2. MUNICIPAL CORPORATIONS (§ 374*)—PUBLIC IMPROVEMENTS—BREACH OF CONTRACT BY CITY—DELAY IN PAYMENT MONTHLY.

A contract with the city of New York, acting through the aqueduct commissioners, for the construction of a dam on the Croton river, provided for paying the contractors as the work progressed, 90 per cent. of monthly approximate estimates of the engineer, certified to the comptroller by the commissioners. Pursuant thereto an estimate was certified on January 12, 1904, and was received by one of the contractors on the 14th; but there existed on file with the comptroller a mechanic's lien applying to this payment, which was not discharged till February 8th following, and 16 days after the last-named date, the contractor stopped work, claiming a breach of contract as to such payment; but the city had not repudiated the contract nor its obligation to pay. Held, that the city was entitled to a reasonable time to pay such estimate, and in view of the fact that its charter (section 260) fixed 30 days as a reasonable time before action could be commenced against it on a claim, and that the course of dealing between the parties as to prior estimates, payment of which was in some cases delayed for a longer time, indicated that a reasonable delay was recognized, it could not be said as a matter of law that the delay in this case was a breach of the contract warranting action therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

Appeal from Trial Term, New York County.

Action by John Williams and another against the City of New York for breach of contract. From a judgment for plaintiffs, defendant appeals. Reversed.

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, McLAUGHLIN, and HOUGHTON, JJ.

Terence Farley, for appellant.
L. Laflin Kellogg, for respondents.

---

INGRAHAM, J.  In the year 1901 the aqueduct commissioners, acting under the authority conferred upon them by chapter 490, p. 666 of the Laws of 1883 (and acts amendatory thereto) in connection with the water supply of the city of New York, determined to construct a dam on the Croton river which was known as the "Muscott dam."  They issued proposals for bids to do the work required by certain specifications which were annexed to the proposals for bids. The plaintiffs submitted a bid which was accepted, and a formal contract was executed on the 10th day of May, 1901.  The contract in form is between:

"The city of New York, acting by and through the aqueduct commissioners, by virtue of the power vested in them by chapter 490, p. 666 of the Laws of 1883, of the state of New York, and the amendments thereto, parties of the first part, and John Williams and Robert J. Gerstle, composing the firm of Williams & Gerstle, of 347 East Forty-Fourth St., New York City, parties of the second part."

By the contract the plaintiffs agreed that they would commence the work within 20 days from the date of the contract, "that the rate of progress of their work shall be such, in the opinion of the engineer, and that they will so conduct the said work that on or before July 1, 1902, the whole work covered by this contract and specification shall be entirely completed," with a penalty of $250 for each day that the contractors should be behind in the performance and completion of the work, and with a further provision that neither an extension of time for any reason beyond that fixed herein for the completion of the work, nor for the doing and acceptance of any part of the work called for by this contract, shall be deemed to be a waiver by the said aqueduct commissioners of the right to abrogate this contract for abandonment or delay, in the manner provided for in the paragraph marked "P" of this agreement.  Paragraph P of the contract provided that:

"The contractors agree that if the work to be done under this agreement shall be abandoned, or if the conditions as to the rate of progress hereinbefore specified are not fulfilled, or if this contract shall be assigned by the parties of the second part otherwise than as in hereinbefore specified, or if at any time the engineer shall be of opinion, and shall so certify in writing to the said aqueduct commissioners, that the said work or any part thereof is unnecessarily or unreasonably delayed, or that the said contractor is violating any of the conditions or covenants of the contract or executing said contract in bad faith, or if the work to be done under the contract be not fully and entirely completed within the time therein stipulated for its completion, the said aqueduct commissioners shall have the power to notify the aforesaid contractor to discontinue all work or any part thereof under his contract by a written notice to be served upon the contractor either personally or by leaving said notice at his residence or with his agent in charge of the work, and thereupon the said contractor shall discontinue said work or such part thereof as said aqueduct commissioners may designate, and the said aqueduct commissioners shall thereupon have the power to place such and so many persons, and obtain by hire such materials, etc., and by contract, as said aqueduct commissioners deem necessary to complete the work herein described, * * * and the expense so charged shall be deducted and paid by the parties of the first part out of such moneys as either may be due, or may at any time thereafter become due to the said contractor under and by virtue of this agreement, or any part thereof."

And it was further agreed that:

"If the work under the contract is not, in the opinion of the aqueduct commissioners, practically completed as hereinbefore provided (clause L), on or before the first day of July, 1902, that one-half of the moneys retained by the city of New York, under clause T, shall be and is hereby forfeited by the said parties of the second part to the said the city of New York, and the aqueduct commissioners shall have the right to take possession of the work."

The contract also contains the further provision: That in order to enable the said contractor to prosecute the work advantageously the engineer shall, once a month, make an estimate in writing of the amount of work done and materials delivered to be used in the work and the value thereof according to the terms of the contract; that the first such estimate shall be of the amount or quantity and value of the work done since the parties of the second part commenced the performance of this contract, on their part, and every subsequent estimate (except the final one) shall be of the amount or quantity and value of the work done since the last preceding estimate was made; that such estimates of amount and quantity shall not be required to be made by strict measurement or exactness, but they may at the option of said engineer be approximate only; and that, upon each such estimate. being made, the parties of the first part will pay to the parties of the second part 90 per cent. of such estimated value.

The plaintiffs commenced work under this contract and proceeded thereunder until January, 1904. The work was not then completed, although according to the terms of the contract it was to have been completed on or before July 1, 1902; but the time for the completion of the work appears to have been extended from time to time by the aqueduct commissioners. On February 18, 1904, the engineers of the aqueduct commissioners certified: That the contract between the city of New York, acting by and through the aqueduct commissioners, and John Williams and Robert J. Gerstle, dated May 10, 1901, for the building of the Muscoot dam on the Croton river at Muscoot Mountain, and the work thereunder, is unnecessarily and unreasonably delayed, and the contractors are violating the conditions or covenants of the contract and executing the same in bad faith, and that the work done under the contract is not fully and entirely completed within the time therein specified in the said contract for its completion. Whereupon and on February 29, 1904, the aqueduct commissioners served a notice on the plaintiffs to discontinue all work under their contract, stating that the notice was served pursuant to the terms and conditions of the contract and because of their failure to comply therewith. That the aqueduct commissioners would proceed to complete the work under the provisions of the contract and discharge the cost thereof as therein provided, and take such other steps as may be legal and proper under the provisions of chapter 490, p. 666, of the Laws of 1883, and the amendments thereto.

Subsequently and in May, 1904, the plaintiffs commenced this action, alleging the making of the contract; that as soon as permitted the plaintiffs proceeded to execute, perform, and carry out the said con-

tract in all respects as therein required, and have performed, executed, and carried out the said contract in all respects as far as permitted by the defendant; that while the plaintiffs were proceeding in good faith to perform, execute, and carry out the terms of the said contract as aforesaid, the defendant wholly failed to perform and carry out the conditions and covenants of the said contract to be kept by them, in that it obstructed, hindered, and delayed the proper performance thereof, in that it wrongfully interfered with the workmen employed by the plaintiffs and refused to allow them to work as ordered by the plaintiffs, in that it compelled the plaintiffs to work under obstructions and difficulties interposed by the defendant and at an increased price, in that it forced the plaintiffs to comply with the provisions of the labor law which have been declared unconstitutional and void by the courts of this state, in that it compelled the plaintiff to do other and additional work to that specified in the contract, in that it failed and refused to make the payments provided in the said contract at the times provided therein, and failed and refused on demand to make the said payments due and payable December 1903, of two monthly payments earned and due according to the estimates duly made covering moneys earned by the plaintiffs and due under the contract, in that it wrongfully and against the terms, conditions, and covenants of the said contract wholly refused to permit the plaintiffs to perform the same, and that on or about the 24th of February, 1904, forcibly took possession thereof, and have since refused to permit the plaintiffs to proceed further thereunder. It was further alleged that the total amount of work done at the time of the breach under the said contract, including the work done and estimated thereunder and the value of materials taken and appropriated by the defendant and the increased cost of the work caused by the obstructions, hindrances, and delays in the performance of said contract, and the said profits, was the sum of $260,309.35, that the amount of money actually received by the plaintiffs from the defendant was the sum of $107,763.30, and demanded judgment for the sum of $162,867.92.

Upon the trial the court held as a matter of law that the defendant had violated the contract by failing to make payments on two provisional estimates, and charged the jury that the plaintiff was entitled to a verdict, leaving it to the jury to assess the damages. To this the defendant excepted and requested the court to submit the question as to whether or not the defendant had violated the contract to the jury. The jury found a verdict for the plaintiffs for $91,000, and from the judgment entered thereon the defendant appeals.

Upon this appeal the plaintiffs rely upon two alleged breaches of the contract. The first is the alleged refusal of the defendant to pay the amount stated in two of the provisional certificates, one known as estimate No. 31, which amounted to $2,405.20, of which the plaintiffs were entitled to 90 per cent., or $2,164.68, and estimate No. 32, which amounted to $283.90, of which plaintiffs were entitled to 90 per cent., or $255.51. The second breach charged against was founded upon the action of the aqueduct commissioners in requiring the contractors to comply with certain provisions of the labor law, in pursuance of a clause of the contract which provided that:

"The contractor will comply with the provisions of chapter 415, p. 461, of the Laws of 1897, as amended, known as the Labor Law, so far as it is constitutional and applicable thereto."

The court charged the jury that the plaintiffs were not entitled to recover for any loss of time, labor, or increased cost of performance of the contract in consequence of the requirement in relation to the labor law, basing the right to recover solely upon the failure of the defendant to pay the amount of these two provisional estimates. If as a matter of law, the failure of the defendant to pay these two provisional estimates was not such a breach of the contract as justified the plaintiffs in abandoning the work and made the city of New York liable as for a breach of the contract, the judgment cannot be sustained.

The contract was made by the aqueduct commissioners, a commission appointed by the Legislature to construct certain aqueducts and reservoirs in connection with the water supply for the city of New York. Under this act there was imposed a duty upon the city of New York to pay the amount provided by such contract in accordance with its terms, and undoubtedly a failure by the city to perform this duty imposed upon it by the sovereign power of the state would subject the city to a liability for the amount of payments provided for by the contract. The question is, however, presented as to whether a failure of the city to comply with the terms of the contract in regard to these payments could be deemed a breach of the contract which would entitle the contractor, upon one of the provisional payments being neglected or refused when demanded, to treat the contract as abrogated and impose a liability upon the city, not only for the amount to be paid under the contract, but for the damages caused by a breach thereof, or the value of the work done under the contract.

Section 30 of the aqueduct act (chapter 490, p. 676, Laws 1883), under the authority of which this contract was made, and the terms of which became a part of it, provides:

"But in no event shall the city of New York be held in any action or proceeding brought or had under any contract so made to any other or greater liability than that expressed therein, nor required to pay out or otherwise dispose of any sum of money for the doing of such work or the furnishing of such material greater than is stipulated in said contract nor otherwise than in strict conformity to the terms thereof."

The aqueduct commissioners had made this contract under the provisions of this act. Their authority was limited in binding the city of New York to the power expressly given by the act, and they could impose no other or greater liability upon the city than the act authorized. The engineers, inspectors, and employés of the commission had no power to bind the city of New York, and while the city of New York was liable for all sums of money required by said contract to be paid, the statute under which the contract was made, by the provision above quoted, subjected the city of New York to no liability on account of such contract or on account of any action of the aqueduct commissioners except as was expressed in the contract, nor required it to pay out or otherwise dispose of any sum of money greater than was stipulated in said contract or otherwise than in strict

conformity to the terms thereof. The municipal corporation had no power to make the contract, to enforce the contract, to terminate the contract, or to do anything except to pay the money provided for by the contract when it became due, which liability had been imposed upon the city by the Legislature.

The question as to the obligation of the city of New York under this act was before the Court of Appeals in O'Brien v. City of New York, 139 N. Y. 543, 35 N. E. 323, where Judge Peckham, speaking for the Court of Appeals, said:

"The position of this provision in the act is quite suggestive upon the question of the liability of defendant for the acts of those who were performing duties for the city by virtue of this statute. When those who confessedly were city officers, and thus to some extent or for some purpose representatives of the city, were permitted by the terms of the statute and by reason of their position to do certain work upon the aqueduct, if directed by the aqueduct commissioners, the provision for the nonliability of the city, excepting under the contract, follows such permission at once. The nonliability of the city is not in terms or in fact confined to those officers thus specifically named, but the principle is fittingly announced at that point. Even for the acts of city officers the city was not to be liable."

And it was further said:

"It was to cover just such claims as are now under discussion that the sections of the statute were enacted. I think the result of their enactment was to so place the contractors with reference to the defendant that the character of its liability at any time was to be discovered by reference to the contracts themselves, and that no implied liability arising from the acts or omissions of any person should be suffered to be created in favor of contractors, or the defendant compelled to answer in damages for any claims outside of the provisions and in accordance with the terms of the contract."

Here was a work involving hundreds of thousands dollars, the cost of which had been by statute placed upon the city of New York. The contract had imposed upon the city of New York an obligation to pay the contract price from time to time under certificates issued by the aqueduct commissioners. The contractors had a cause of action against the city for the moneys due to them from time to time under the contract, but under the express provisions of the statute which authorized the making of the contract the liability of the city in relation to the work or the contract was limited to the obligations imposed upon it by the contract. In the light of these clear and explicit provisions of the statute limiting the liability of the city of New York, it seems to me that there could be no liability imposed upon the city except to make the payment which became due under the contract.

We will assume that the plaintiffs had a cause of action against the city to recover the amount which by these provisional estimates the city was required to pay, and that in an action brought against the city to recover the amount of those estimates the city would have had no defense; and it may be that if the city absolutely refused to pay these provisional estimates so that the plaintiffs were unable to continue the work in consequence of their failure to receive what they were entitled to receive under the contract, that they would have been justified in abandoning the work and of recovering from the city the amount of the 10 per cent. of the estimates that had been reserved until the final completion of the work, for that was work done under the contract

114 N.Y.S.—42

according to the special prices to be paid for such work and for which under the contract the city was liable. But the statute expressly forbids, as I read it, the imposing of any other liability or obligation upon the city, and the city therefore could not be liable for a breach of the contract, a liability outside of its provisions and not specifically imposed by its terms or by the act under which the aqueduct commissioners were authorized to make a contract which would bind the city of New York. I am therefore of the opinion that the city was not liable for the damages sustained by the plaintiffs by reason of their not completing the contract or for the value of the work done under it, and that the judgment cannot be sustained.

I am also of the opinion that the learned trial judge was quite wrong in holding that on the facts here disclosed there was as a matter of law a breach of the contract, which justified the plaintiffs in abandoning the work under it. The certificate for the work done during the month of December, 1903, known as "Estimate No. 31," was certified by the commission on January 12, 1904. One of the plaintiffs testified that he received this certificate from the aqueduct commissioners on January 14, 1904, but at that time there existed on file with the comptroller a mechanic's lien which applied to this payment, and that lien was not discharged until February 8, 1904. Thus, according to the plaintiff's own testimony, it was not until February 8, 1904, that they became entitled to the payment. The defendant had a reasonable time within which to pay to the plaintiffs the amount due, and a mere delay in payment for a reasonable time to enable it to make the necessary arrangements for that purpose was not upon any possible construction of the contract a breach thereof. The comptroller of the city of New York cannot be expected to have the money ready or warrants drawn for the payment of claims against the city immediately upon presentation. The fiscal officer of a large municipal corporation is entitled to reasonable time after the claim is presented to make payments. There is nothing to show that the liability of the city to pay this amount was ever repudiated by the comptroller. There was a simple delay in making the payments.

The necessity of time to make payment is recognized by the charter, which requires a claim to be presented for payment to the comptroller of the city of New York, and that he has neglected to pay it for 30 days, before an action can be maintained upon it against the city. Section 261, Charter (chapter 466, p. 114, Laws 1901, as amended by chapter 550, p. 1473, Laws 1906). This is to give the comptroller the necessary time to make the proper investigation and provide for the payment of the claim, and the charter fixes 30 days as a reasonable time for that purpose. Here an amount had been due from the city from the 14th of January, but the comptroller was prevented from paying it in consequence of liens that had been filed against the amount due under it. The lien had been removed on the 8th of February, but the comptroller was entitled to make a proper investigation to see that no further liens had been filed, to see that the order discharging the lien had been complied with, and to see that the city would be protected in making a payment. The charter has fixed 30 days as such a reasonable time before an action can be commenced against the city on a

claim, but on February 24th, but 16 days after this lien was discharged, so that plaintiffs became entitled to the payment, the plaintiffs served upon the aqueduct commissioners a notice that by reason of the failure of the city of New York to make monthly payments in the manner and form provided and called for in the contract, and for other reasons mentioned, they elected to treat the action of the aqueduct commissioners as a breach of the contract, to stop all work thereunder, and to hold the city of New York responsible for not only the amount already earned under and in connection with the contract, but also for the damages sustained by the plaintiffs by reason of the matter stated.

On the 29th of ·February, the aqueduct commissioners served the notice that the plaintiffs had failed to comply with the contract, and that the aqueduct commissioners, under the authority contained in the statute and in the contract itself, had elected to complete the contract and charged the plaintiffs with the costs. It certainly cannot be said as a matter of law that a mere delay of 16 days to pay an amount due under such a provisional estimate, where there was no repudiation of the obligation to pay by the city and no repudiation of the contract by its authorized representatives, was a breach of the contract which entitled the contracting party to maintain an action for its breach.

The learned trial court held that the question of a reasonable time was a question of law for the court, and not for the jury, and that, of course, is the correct rule of law under certain restrictions. I am inclined to think that, as a matter of law, 16 days, under the circumstances presented here, was not an unreasonable time for the city to take to make the necessary examination and preparation for the payment; but the utmost that could be said is that, under these circumstances, with the knowledge of the course of business that had been established between the parties in relation to these payments, it was a question of fact for the jury to say whether this delay was unreasonable. Thus in looking at the prior payments under this contract, we find that: Estimate No. 1 was certified July 10, 1901, and paid August 2, 1901, 23 days after the certificate was certified. Estimate No. 2 for July, 1901, was certified July 30, 1901, and paid August 12, 1901, 14 days after the certificate was certified. Estimate No. 3 for August, 1901, was certified September 10, 1901, and paid September 26, 1901, 16 days after the certificate was certified. Estimate No. 4 was certified October 8, 1901, and paid October 23d. Estimate No. 5, for October, 1901, was certified November 7, 1901, and paid November 21, 1901. Estimate No. 6 for November, 1901, was certified December 10, 1901, and paid December 24, 1901. Estimate No. 7 for December, 1901, was certified January 7, 1902, and was apparently not paid until July 2, 1902. Estimate No. 8 for January, 1902, was certified February 4, 1902, and was paid July 2, 1902. Estimate No. 9 for February, 1902, was certified May 13, 1902, and paid July 2, 1902, and the subsequent monthly estimates were paid from 10 to 30 days after the certificates were granted. The course of dealing between the parties thus clearly indicates that a reasonable delay after the certification of these estimates to enable the city officials to make the payments was recognized, and the continuance of this established custom, in the absence of any express repudiation of liability on the part of the city by

its responsible officers, was not a breach of the contract which justified a contractor in abandoning it and suing the city for damages as for a breach.

It is quite clear that the action of the aqueduct commissioners or their engineer or employés in insisting on a compliance with the labor law was not a breach of the contract which imposed the liability on the city of New York. O'Brien v. City of New York.

There are other questions presented upon this appeal which it is unnecessary to determine, as the determination of these two questions requires a reversal of the judgment.

The judgment is therefore reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.