## CRANFORD CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. April 4, 1912.)

1. CONTRACTS (§ 312*)—BREACH—FAILURE TO PAY INSTALLMENTS.

The failure of a party to a contract to pay an installment when due is such a breach as will absolve the other party from all obligation to perform on his part while the default continues.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. § 312.*]

2. MUNICIPAL CORPORATIONS (§ 352*)—TIME—CONSTRUCTION CONTRACTS—REASONABLE TIME.

Where a contract for city work did not provide within what time, after a monthly estimate of the amount of work done, the city should make the payment of 95 per cent. of the estimate required by the contract, the obligation was to pay within a reasonable time.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 883, 884; Dec. Dig. § 352.*]

3. MUNICIPAL CORPORATIONS (§ 354*)—CONSTRUCTION CONTRACTS—PAYMENT ON ESTIMATES—DELAY IN PAYMENTS.

Where a contractor for city work refrained from any attempt to collect sums due upon monthly estimates for several months, whether the city's delay in payment after a peremptory demand by such contractor for payment of all installments due and an announcement of the intention to rescind upon nonpayment was so unreasonable as to entitle him to rescind and sue on quantum meruit will be determined with reference to the last estimate made.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

4. MUNICIPAL CORPORATIONS (§ 354*)—CONTRACTS—BREACH—TIME OF PAYMENT.

A delay of 24 days by a city in making payment on a monthly estimate of work completed under a contract for the drilling of a test shaft was not so unreasonable as to entitle the contractor to rescind and sue on a quantum meruit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

5. MUNICIPAL CORPORATIONS (§ 354*)—PUBLIC IMPROVEMENTS—BREACH OF CONTRACT BY CITY—DELAY IN MONTHLY PAYMENT.

A contract with a city provided for monthly estimates of the work done and materials furnished, and for the payment by the city to the contractor of 95 per cent. of each estimate, but fixed no time for such payment. Payment of May and June estimates was accepted by the contractor in September, and of July and August estimates on a later day in September. Upon the nonpayment of September, October, and November estimates, the contractor after a peremptory demand for payment of all the money due within three days elected to rescind and sue on quantum meruit. Held, the acceptance of payment on former estimates without objection after delay established a course of dealing from which the contractor could not depart without reasonable notice, and the continuance of the custom was not a breach which would entitle him to abandon the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

6. MUNICIPAL CORPORATIONS (§ 354*)—PUBLIC IMPROVEMENTS—BREACH OF CONTRACT BY CITY—DELAY IN MONTHLY PAYMENTS.

Where a contract between a city and a contractor contained provisions for the prompt completion of the work, and that "partial payments may

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be at any time withheld if work is not proceeding in accordance with this agreement," the contractor would not be entitled to rescind and sue on a quantum meruit for the nonpayment of monthly estimates, where the speed contracted for was not maintained up to the time of the election to rescind.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 886, 887; Dec. Dig. § 354.*]

7. DAMAGES (§ 118*)—PUBLIC IMPROVEMENTS—CONTRACTS—BREACH BY CITY—
DAMAGES.

Upon rescission by a contractor for city work for failure of the city to make payments on monthly estimates under the contract in his action for the breach, the contract price would determine the damages where the city was guilty of no wanton or willful default, and the cost of performing the work was enhanced by no act of the city or its officers.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 287; Dec. Dig. § 118.*]

Action by the Cranford Company against the City of New York. On verdict for defendant, plaintiff moved for a new trial upon exceptions, which were ordered to be heard in the first instance at the Appellate Division. Exceptions overruled, and judgment directed for the defendant.

Argued before INGRAHAM, P. J., and McLAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Alton B. Parker, for plaintiff.
Loyal Leale, for defendant.

SCOTT, J. In February, 1907, the city of New York, by the Board of Water Supply, entered into a contract with plaintiff for the sinking of two test or exploration shafts on either side of the Hudson river for the purpose of determining the elevation at which solid rock might be found, and the suitability of this rock for containing the Catskill aqueduct tunnel. The work to be done and the rate of payment for each item of work was specifically defined by the contract. Inasmuch as speed in completion was deemed to be of great importance, each bidder was requested to name in his proposal the speed which he was willing to guarantee, and a bonus of $400 per day was agreed to be paid to the contractor in case the work should be completed earlier than the bid time, and in case guaranteed progress was not made $100 per day, not including the first 25 days, it was stipulated should be exacted as liquidated damages.

As to payments, the contract provided that the engineer should from time to time, as the work progressed, but not oftener than once in each month, make in writing an estimate of the work done and the materials furnished since the last preceding estimate, and that the city should pay to the contractor 95 per cent. of each estimate, a final adjustment of accounts and a final estimate to be made when the work should be completed. No time was specified in the contract within which the city should pay the 95 per cent. of each monthly estimate after the same should have been made and signed by the engineer.

The plaintiff entered upon the performance of the contract, and received seven monthly estimates from the engineer, the first being dat-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ed May 18, 1907, and the last November 13, 1907. In each month the engineer made and signed the estimate within a few days after the tenth of the month, and no complaint is made of any delay on this score. The estimates for May and June were paid on September 17, 1907, and those for July and August were paid on September 26, 1907. The evidence recalls the fact, which has passed into history, that the autumn of 1907 was a period of severe financial stringency, when money was scarce and difficult to be had even by the most solvent, and it is, perhaps, for this reason that the city was dilatory in paying the September, October, and November estimates. At all events, it had not paid them by December 4, 1907, on which date plaintiff, by letter, notified the Board of Water Supply that unless the three last mentioned estimates, aggregating about $25,000, were paid within three days from date—that is to say, on or before December 7, 1907—it would discontinue the work. The amount of the estimates was not paid within the time specified, and on December 9, 1907, plaintiff did discontinue work, and so notified the Board of Water Supply on December 12th. It appears in evidence that plaintiff had made serious mistakes in estimating upon the work to be done, and the rate of progress which it could make, so that, as was testified by one of its officers, they were glad to get out of the contract.

The plaintiff now sues as upon a quantum meruit for the fair value of all the work done by it, including the cost of its plant, less the sums which it was paid, at contract rates, under the first four monthly estimates. In consequence of its erroneous estimate of the cost of doing the work, it now claims upwards of $200,000, although the unpaid estimates barely exceeded $25,000. The theory of the action is that the defendant committed a breach of the contract in having failed to promptly pay the September, October, and November estimates; that this breach justified the plaintiff in rescinding the contract; and that, having so rescinded it for just cause, it is entitled to recover the fair value of the work performed, and the cost of plant, without regard to the contract prices.

[1] There is ample authority for the proposition that the failure of one party to a contract to pay an installment when due is such a breach of the contract as will absolve the other party from all obligations to perform on his part while the default continues. Wharton v. Winch, 140 N. Y. 287–293, 35 N. E. 589.

[2] The first question to be considered, therefore, is whether there was such a breach by the city in the present case. As has already been said, the contract does not provide within what time after a monthly estimate has been made the city must pay the 95 per cent. thereof. The obligation therefore is to pay it within a reasonable time. What constitutes a reasonable time under a city contract has been the subject of consideration on more than one occasion. In Jones v. City of New York, 47 App. Div. 39, 62 N. Y. Supp. 284, this court said:

"What would be inexcusable or unreasonable delay, however, on the part of an individual or a partnership, or even a business corporation, might not be such in the case of a municipal corporation, with its complex system operated through independent official agencies. The contractor who deals with such a public corporation should not look for the same promptitude of payment as though he were dealing with private parties. He must expect occasional de-

lay and inconvenience as the result of the necessary formalities prescribed by law, and also from unforeseen contingencies such as the exhaustion of the fund applicable to the work."

In Williams v. City of New York, 130 App. Div. 182, 114 N. Y. Supp. 652, which arose under a contract executed by the Board of Aqueduct Commissioners, the plaintiff claimed a breach of the contract by the city in consequence of its neglect to promptly pay a monthly estimate. The estimate had been made on January 12, 1904, but at that time a lien against the contractor was on file in the comptroller's office, which was not removed until February 8, 1904. On February 24th the contractor served notice of rescission of the contract. "The defendant had a reasonable time within which to pay to the plaintiffs the amount due, and a mere delay in payment for a reasonable time to enable it to make the necessary arrangements for that purpose was not, upon any possible construction of the contract, a breach thereof. The comptroller of the city of New York cannot be expected to have the money ready, and the warrants drawn for the payment of claims against the city immediately upon presentation. The fiscal officer of a large municipal corporation is entitled to a reasonable time after a claim is presented to make payment. There is nothing to show that the liability of the city to pay this amount was ever repudiated by the comptroller. There was a simple delay in making the payments. The necessity of time to make the payment is recognized by the charter, which requires a claim to be presented for payment to the comptroller of the city of New York, and that he has neglected to pay it for 30 days before an action can be maintained upon it against the city. Greater New York Charter (Laws of 1901, c. 466) § 261, as since amended by Laws 1906, c. 550, and Laws 1907, c. 677. This is to give the comptroller the necessary time to make the proper investigation, and provide for the payment of the claim, and the charter fixes 30 days as a reasonable time for that purpose. * * * The charter has fixed 30 days as such a reasonable time before an action can be commenced against the city on a claim, but on February 24th, but 16 days after this lien was discharged, so that plaintiffs became entitled to the payments, the plaintiffs served upon the Aqueduct Commissioners a notice that by reason of the failure of the city of New York to make monthly payments in the manner and form provided and called for in the contract and for other reasons mentioned they elected to treat the action of the Aqueduct Commissioners as a breach of the contract to stop all work thereunder, and to hold the city of New York responsible for, not only the amount earned under and in connection with the contract, but also for the damages sustained by the plaintiffs by reason of the matters stated."

[3] In the present case the plaintiff peremptorily demanded the payment of all of these monthly estimates, announcing that, if they were not all immediately paid, it would elect to rescind the contract. If payment of any one of these estimates was not at that time unreasonably delayed, the plaintiff was not entitled to rescind. Its right to do so must, therefore, be tested with reference to the latest estimate, that of November 13, 1907.

[4] The demand for its payment was made on December 4th, and was that it should be paid within three days, or not later than December 7th, which would have been only 24 days after the estimate was signed, and doubtless a less time after its receipt by the comptroller. If the plaintiff's right to rescind had rested upon the nonpayment of the September and October estimates, we think that there would have been a question for the jury as to whether or not the delay was unreasonable, but, as to the November estimate, we are of opinion that as matter of law the delay was not unreasonable, and that a finding to the contrary could not have been sustained.

[5] Furthermore, we are of the opinion that the plaintiff's demand on December 4th for what amounted to instant payment of the three estimates was unreasonable. As has been said, the plaintiff had accepted, apparently without protest as to the delay, payment of the May and June estimates on September 17th, and of the July and August estimates on September 26th. This established a course of dealing, from which, indeed, the plaintiff might at any time depart, but not without a reasonable notice of its intention to do so. Until it had received such a notice, the city was entitled to rely upon a continuance of similar forbearance. To quote again from the Williams Case, supra:

"The course of dealing between the parties thus clearly indicates that a reasonable delay after the certification of these estimates to enable the city officials to make the payments was recognized, and the continuance of this established custom in the absence of any express repudiation of liability on the part of the city by its responsible officers was not a breach of the contract which justified a contractor in abandoning it and suing the city for damages as for a breach."

[6] But, apart from any question as to the reasonableness of the delay, the fact is that the plaintiff when it undertook to rescind was not entitled to be paid. The contract provided in clear and definite terms that "partial payments may be at any time withheld if work is not proceeding in accordance with this agreement." The reference, of course, is to the speed which in another part of the contract is declared to be of great importance in the work. The evidence from the plaintiff's own officer was that it had never accomplished the speed contracted for and guaranteed up to the time that the work was discontinued. This of itself was quite sufficient to justify the nonpayment of the estimates.

[7] These considerations justified the dismissal of the complaint, and it is unnecessary to discuss the measure of damages that would have been applicable if the plaintiff had been justified in its attempted rescission, further than to say that in our opinion the plaintiff could not in any event recover more than the contract price of the work actually performed. It is not contended that the city was guilty of wanton or willful default, or that the cost of performing the work was enhanced by any act of the city or its officers. Under these circumstances, the contract prices would determine the damages. Koon v. Greenman, 7 Wend. 121; Nason Mfg. Co. v. Stephens, 127 N. Y. 602, 28 N. E. 411; Doolittle v. McCullough, 12 Ohio St. 360.

It follows that the exceptions must be overruled and judgment directed for defendant upon the dismissal of the complaint, with costs and disbursements. All concur.